26 C.C.P.A.(Patents)

## GOTHAM SILK HOSIERY CO., Inc., v. NARROW FABRIC CO.

### Patent Appeal No. 4047.

Court of Customs and Patent Appeals.

March 6, 1939.

BLAND, Associate Judge, dissenting.

Darby & Darby, of New York City (Louis D. Fletcher, of New York City, of counsel), for appellant.

Howson & Howson, of Philadelphia, Pa. (Alfred E. Ischinger, of Reading, Pa., and Kennard N. Ware, of Philadelphia, Pa., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal, in a trade-mark cancellation proceeding, from a decision of the Commissioner of Patents affirming that of the Examiner of Interferences dismissing appellant's petition for cancellation of the registered trade-mark of appellee.

The sole issue raised by the appeal is whether or not the Commissioner of Patents erred in ruling that there was no likelihood of confusion resulting from the use of the trade-marks in issue on the respective goods of the parties. The registered trade-mark of appellee consists of a gold colored zig-zag line appearing across the entire width of narrow elastic fabric. The trade-mark of appellant is a golden colored stripe near the top of a stocking.

Appellant has two registered trade-marks. One consists of the words "Gold Stripe," registered June 10, 1913. The other consists of a gold colored stripe near the top of a stocking, registered February 18, 1913. Both trade-marks were renewed at the end of the statutory period.

Both parties took testimony. The evidence shows that appellant is exclusively a hosiery manufacturer. It has been making and selling hosiery since 1913, using the trade-marks indicated above. Its stockings go to the ultimate consumer, in its own box, through sale in the hosiery departments of retail stores. The toe of every stocking carries the words "Gold Stripe" and a gold colored stripe is woven around the circumference near the top of the stocking. "Gold Stripe" is also printed on the boxes containing appellant's merchandise and on bands which bind the stockings together.

The record further shows that the sole business of appellee is the manufacture of narrow fabrics, a portion of which are elastic. The zig-zag strand is used only in the solid elastic fabrics. The record also discloses that this elastic fabric sold to manufacturers for use in the construction of so-called "foundation garments," underwear, brassieres, and the like is not seen by the ultimate consumer when used in this connection. About a third of appellee's sales are made to department stores through wholesale dealers and these stores sell the narrow elastic fabric for replacements in the above mentioned garments. Furthermore, the elastic fabric manufactured by appellee, to which its trade-mark is applied, according to the uncontradicted testimony of appellee, is not fit to be incorporated into the stockings of appellant because of its physical properties, that is, it has too strong a tension to be comfortable on the leg, and the narrowness of the fabric would not be conducive to ease in wearing.

We are of opinion, after a careful consideration of the record, that the Commissioner of Patents was correct in holding that there was no likelihood of confusion between the respective trade-marks of ap-

pellant and appellee. We base our decision upon the following grounds: 1. The trade-marks are applied to radically different goods. 2. There is no evidence upon which likelihood of confusion of origin can be reasonably predicated.

1. Although both the merchandise of appellant and appellee are designed for use as part of women's wearing apparel, nevertheless there are such fundamental distinctions between the goods involved that there is no likelihood of confusion arising in the mind of the ultimate consumer. An examination of the exhibits of appellant reveals that the elastic fabric used at the top of the knee-length stocking is highly ornamental, with comparatively little tension and broad enough to allow the stockings to be held in place with little, if any, discomfort. On the other hand, the elastic fabric of appellee, which bears its trade-mark, is narrow, strong in tension and obviously designed for other purposes than to hold up stockings.

The narrow elastic fabric, used principally in such garments as brassieres and other underwear, is not closely related in use to the relatively broad and ornamental type of elastic fabric used with silk stockings, and, furthermore, the record clearly discloses that the merchandise of the parties is not so closely related in the minds of the ultimate consumers as to constitute likelihood of confusion as to origin.

2. The trade-mark of appellee "is a technical mark and consists only in a narrow zig-zag line formed by a gold colored strand on an elastic tape." The tape thus marked is not used in stockings. In most of its sales by the manner in which the goods are used it will not even be seen. In the case of sales for replacements, where the trade-mark of appellee is visible, an examination of the exhibits of the respective parties discloses such a difference that we believe there is no likelihood of confusion as to origin.

The fabric of appellee, to which its trade-mark is applied, has never been used in stockings. If it were to be so used it would have to be substantially changed.

The goods of the respective parties probably belong to the same broad class in that they both pertain to women's apparel and in that respect may be said to be of the same descriptive properties. They are not identical, however, and when this fact is considered in connection with the clear difference in the marks we can see no reason to disagree with the decision of the Commissioner of Patents. Skram Co. v. Bayer Co., Inc., 82 F.2d 615, 23 C. C.P.A., Patents, 1049.

We are of opinion that the Commissioner of Patents was correct in holding that there was no likelihood of confusion resulting from a use of the respective trade-marks of the parties, and for the reasons set forth herein the decision of the Commissioner of Patents is affirmed.

Affirmed.

BLAND, Associate Judge (dissenting).

I am in disagreement with the majority that there is no likelihood of confusion by the concurrent use of the two marks upon the respective goods of the parties. The marks are confusingly similar and the goods are of the same descriptive properties. There is a direct relationship shown by the record between the narrow elastic fabrics and stockings. This matter is not referred to in the opinion. The appellee advertises that it manufactures a narrow elastic fabric for use in certain kinds of stockings and shows how it is used, and the mere fact that it did not advertise the fabric with the stripe in it for use on stockings, to my mind, does not justify leaving this matter out of consideration.

Appellee's witness conceded that certain of its elastic fabrics could be used in appellant's stockings. If the fabric containing the stripe is used in stockings, surely it could not be contended that there was no likelihood of confusion as to the origin of the fabric. A gold stripe elastic fabric in appellant's gold stripe stockings would surely suggest to some purchasers that there was a common origin for both articles.